# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Francisco Cerritos Echevarria, | No. CV-25-03252-PHX-DWL (ESW) |
| Petitioner, | **ORDER** |
| v. | |
| Pam Bondi, et al., | |
| Respondents. | |

In advance of the hearing on September 30, 2025, the Court wishes to provide the parties with its tentative ruling. The point of providing it beforehand is to streamline oral argument and enhance the parties' ability to address any perceived errors in the Court's tentative analysis. This is not an invitation to submit additional evidence or briefing.

Dated this 26th day of September, 2025.

Dominic W. Lanza
United States District Judge

TENTATIVE RULING

On September 5, 2025, Petitioner, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2241 challenging his immigration detention, as well as a motion for temporary restraining order and preliminary injunction. (Docs. 1, 2.) After the motion for injunctive relief became fully briefed (Doc. 9), the Court notified the parties of its intent to consolidate the request for preliminary injunction with the merits of this action pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure (Doc. 10), issued a tentative ruling (Doc. 11), and held a hearing. The Court now grants the petition to the extent it seeks an order compelling a prompt bond hearing before an immigration judge ("IJ").

I.     Relevant Background

Petitioner is a native and citizen of El Salvador. (Doc. 1 ¶ 14; Doc. 9-1 at 3 ¶ 4.)

On May 1, 2001, the United States Border Patrol ("USBP") encountered Petitioner at or near Douglas, Arizona. (Doc. 9-1 at 3 ¶ 5.) Petitioner was processed as a voluntary return and returned to Mexico. (*Id.*)

At an unspecified time later in 2001, Plaintiff returned to the United States. (Doc. 1 ¶ 37 ["Petitioner has resided in the United States for approximately twenty-four years . . . . Petitioner has a prior voluntary return; however, since his entry in 2001, he has had no contact with immigration authorities."].)

On three occasions between 2011 and 2019, Petitioner was convicted of the crime of driving under the influence of alcohol ("DUI") and sentenced to short jail terms followed by a period of probation. (Doc. 9-1 at 3 ¶¶ 6-8.)

On July 2, 2025, Petitioner was arrested outside his home in Los Angeles, California and placed in removal proceedings. (Doc. 1 ¶¶ 38, 39; Doc. 3-2 at 3; Doc. 9-1 at 3 ¶¶ 9, 12.) In the "Notice to Appear," issued that same day, the issuing officer had the option of identifying Petitioner as (1) "an arriving alien"; (2) "an alien present in the United States who has not been admitted or paroled"; or (3) an alien who has "been admitted to the United States, but are removable for the reasons stated below." (Doc. 9-1 at 6.) The issuing officer checked the box indicating that Petitioner is "an alien present in the United States who has not been admitted or paroled." (*Id.*)

A July 8, 2025 policy guidance memorandum issued by the U.S. Department of Homeland Security ("DHS") announced that DHS "has revisited its legal position on detention and release authorities." (Doc. 3-2 at 10.) Under this "revisited" legal position, "[e]ffective immediately, it is the position of DHS that" any "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival," should be deemed an "applicant for admission" and thus subject to mandatory detention under 8 U.S.C. § 1225(b). (*Id.*) "For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." (*Id.*)

On July 14, 2025, an IJ denied Petitioner's request for bond. (Doc. 9-1 at 3 ¶ 12.) The order stated: "This Court lacks jurisdiction pursuant to Matter of Q Li." (Doc. 9-1 at 10.) The cited decision, *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025), held that the IJ in that case "lack[ed] jurisdiction to consider the respondent's request for release on bond" because the respondent should be "treated as an applicant for admission" and was "detained under . . . 8 U.S.C. § 1225(b)(2)(A) and thus ineligible for release on bond." *Id.* at 66-68 (cleaned up).

On August 20, 2025, an IJ denied Petitioner's request to reconsider the bond decision. (Doc. 9-1 at 4 ¶ 15.)

II.     Petitioner's Position

Petitioner's overarching argument is that the "[t]he denial of bond hearing to Petitioner and his ongoing detention on the basis of the new DHS policy violates the plain language of the Immigration and Nationality Act . . . . Despite the new DHS policy's assertions to the contrary, 8 U.S.C. § 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on bond or conditional parole. Section 1226(a) expressly applies to people who, like Petitioner, are charged as removable for having entered the United States without inspection and being present without admission. Respondents' new legal interpretation set forth in the policy is

1  contrary to the statutory framework and contrary to decades of agency practice applying
2  § 1226(a) to people like Petitioner who are present within the United States.  Respondents'
3  new policy and the resulting ongoing detention of Petitioner without a bond hearing is
4  depriving Petitioner of statutory and constitutional rights and unquestionably constitutes
5  irreparable injury."  (Doc. 3 at 2-3.)

As relief, Petition seeks an order "enjoining Respondents from continuing to detain him unless Petitioner is provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days."  (*Id.* at 3.)

III.   Jurisdiction-Stripping Arguments

Respondents first argue that 8 U.S.C. § 1252(a)(2)(A), § 1252(e), § 1252(g), and/or § 1252(b)(9) strip this Court of jurisdiction to consider Petitioner's claims.  (Doc. 9 at 4-7.)  Respondents are mistaken.  *See generally Barajas v. Noem*, 2025 WL 2717650, *3 (S.D. Iowa 2025) ("The Federal Defendants argue that sections 1252(g) and (b)(9) preclude this Court from weighing in on active deportation cases, even for the limited purpose of evaluating whether respondents in those proceedings are entitled to bond hearings and other forms of due process.  Federal officials have raised this argument in recent months in cases similar to this one.  The Court agrees with these well-reasoned decisions and will not repeat their analysis in its entirety.").

First, § 1252(g)[1] "does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention." *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023). *See also Hasan v. Crawford*, 2025 WL 2682255, *4 (E.D. Va. 2025) ("Because Hasan's custody proceedings are independent of, and collateral to, the removal process, § 1252(g) does not serve as a jurisdictional bar.  Accordingly, the Court finds that it possesses jurisdiction to entertain Hasan's Petition to the extent he challenges the constitutionality of his detention.").

Nevertheless, Respondents contend that Petitioner's claims "necessarily arise 'from

---

[1]  "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."  8 U.S.C. § 1252(g).

the decision or action by the Attorney General to commence proceedings [and] adjudicate cases'—over which Congress has explicitly foreclosed district court jurisdiction." (Doc. 9 at 4-5.) But it is well-settled that challenges to detention fall outside of § 1252(g)'s ambit. As an initial matter, the Supreme Court has already "rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482 (1999)). Additionally, the Ninth Circuit recently reinforced that "[i]nstead of sweeping in any claim that can technically be said to arise from the three listed actions, the provision refers to just those three specific actions themselves.'" *Ibarra-Perez v. United States.*, __ F.4th __, 2025 WL 2461663, *7 (9th Cir. 2025) (cleaned up) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)).

Because "the phrase 'arising from' is not 'infinitely elastic,'" it "does not reach 'claims that are independent of, or wholly collateral to, the removal process.'" *Kong*, 62 F.4th at 614 (citation omitted). "Among such 'collateral' claims" not subject to the § 1252(g) bar on judicial review are "claims seeking review of the legality of a petitioner's detention." *Id*. Even though, "[i]n a but-for sense," a claim of unlawful detention might arise from the government's decision to commence proceedings, adjudicate a case, or execute a removal, challenges to unlawful detention "do not 'arise from' the government's decision to 'execute removal orders' within the meaning of § 1252(g) simply because the claims relate to that discretionary, prosecutorial decision." *Id.* at 613.

Next, as for § 1252(b)(9),[2] *Ibarra-Perez* reiterated that this provision does not bar claims that are "independent of or collateral to the removal process." *Ibarra-Perez*, 2025 WL 2461663 at *9. Likewise, in *Nielsen v. Preap*, 586 U.S. 392 (2019), the Supreme Court held that § 1252(b)(9) did not bar a lawsuit that, like this one, sought to challenge the

---

[2] "Judicial review of all questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).

- 6 -

government's contention that it was statutorily entitled to detain aliens without a bonding hearing during the pendency of their removal proceedings. *Id.* at 402 ("Nor are we stripped of jurisdiction by § 1252(b)(9) . . . [because] respondents here are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]; and they are not even challenging any part of the process by which their removability will be determined.") (cleaned up). *See also Hasan*, 2025 WL 2682255 at *4 ("Section 1252(b)(9) does not insulate detention orders from judicial review because they are 'separate and apart from' orders of removal.").

Next, § 1252(e) does not support Respondents' position because it only applies "in any action pertaining to an order to exclude an alien."[3] Here, Petitioner does not seek to challenge an exclusion order and only challenges the denial of a bond hearing.

Finally, for similar reasons, § 1252(a)(2)(A)[4] is inapplicable here. *Padilla v. U.S. Immigration and Customs Enforcement*, 704 F. Supp. 3d 1163, 1170 (W.D. Wash. 2023) ("[T]he Court continues to find that § 1252(a)(2)(A) has no application to Plaintiffs' claims. This provision only applies to the procedures and policies necessary to implement the removal process. Here, Plaintiffs' bond hearing claims do not challenge the removal process—just whether they should be afforded a bond hearing . . . .").

IV. Whether Petitioner Is An "Applicant For Admission" And Thus Subject To Mandatory Detention Under § 1225(b)(2)(A)

The parties' merits arguments implicate two statutory provisions. The first relevant provision is 8 U.S.C. § 1225(b)(2)(A), which provides that, absent exceptions that are

---

[3] "Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may enter declaratory, injunctive, other equitable relief in any action pertaining to an order to exclude an alien in accordance with section § 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." 8 U.S.C. § 1252(e)(1)(A).

[4] "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—(i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title[.]" 8 U.S.C. § 1252(a)(2)(A).

inapplicable here, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." *Id.* In other words, § 1225(b)(2)(A) generally provides for the mandatory detention of an "alien who is an applicant for admission" during the pendency of that alien's removal proceeding.

The second relevant provision is 8 U.S.C. § 1226(a), which provides, in pertinent part, that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General . . . may continue to detain the arrested alien; and . . . may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole." *Id.* In other words, § 1226(a) contemplates that an alien who is arrested and detained pending a removal decision is "generally" entitled to a bond hearing. *Nielsen*, 586 U.S. at 395-98 ("Aliens who are arrested because they are believed to be deportable may generally apply for release on bond or parole while the question of their removal is being decided. These aliens may secure their release by proving to the satisfaction of a Department of Homeland Security officer or an immigration judge that they would not endanger others and would not flee if released from custody. . . . 8 U.S.C. § 1226(a) generally permits an alien to seek release in this way . . . ."). This is the "default rule." *Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal. . . . Section 1226(a) sets out the default rule . . . ."). *See also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196-97 (9th Cir. 2022) ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal. . . . Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final. . . . Additional provisions supplement § 1226's detention scheme. Section 1225(b) applies to an 'applicant for admission' . . . .") (citations

omitted).

As noted, Petitioner's position is that he does not qualify as an "applicant for admission" and, thus, he was not subject to mandatory detention under § 1225(b)(2)(A) and instead should have been afforded the opportunity to seek release under § 1226(a). Respondents disagree, arguing that Petitioner was properly characterized as an "applicant for admission," and thus subjected to mandatory detention, due to his status as an alien who was present in the United States and has not been admitted. (Doc. 9 at 7-9.)

Petitioner has the better of this argument. Respondents do not grapple with Petitioner's decades-long presence in the United States or persuasively explain how he could be considered an "applicant for admission" in light of that presence. Nor have Respondents cited any cases agreeing with their position that § 1225(b)(2)(A) applies to aliens in Petitioner's situation. Respondents' *ipse dixit* that "Petitioner's status" under "the plain language of §§ 1225 and 1226" is "well established" (Doc. 90 at 15) is thus bizarre and incorrect. In fact, there is fast-growing and apparently unanimous body of authority rejecting Respondents' position. *See, e.g., Hasan*, 2025 WL 2682255 at *9 ("For all these reasons, . . . Hasan's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures."); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025) ("Rodriguez has shown that the text of Section 1226, canons of interpretation, legislative history, and longstanding agency practice indicate that he is governed under Section 1226(a)'s 'default' rule for discretionary detention. The Court is persuaded that Rodriguez is likely to succeed on the merits that he is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision."); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, *7 (E.D. Mich. 2025) ("The BIA's decision to pivot from three decades of consistent statutory interpretation and call for Pizarro Reyes' detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation. At least a dozen federal courts concur generally with this Court's interpretation of the statutory language as applied in this context."). The Court need not reiterate all of the analysis from those decisions but agrees

with them and highlights a few points that bear repeating.

First, even acknowledging that "divining the meaning of the complex provisions of the [Immigration and Nationality Act] is ordinarily not for the faint of heart," *Rodriguez*, 779 F. Supp. 3d at 1256 (cleaned up), Respondents' position "fails to take account of traditional tools of statutory construction." *Hasan*, 2025 WL 2682255 at *8. As *Pizzaro Reyes* persuasively explains:

> [T]he overall context of § 1225 limits the scope of the terms 'applicant for admission' and 'seeking admission' in § 1225(b)(2)(A). . . . To start, giving effect to each clause and word of a statute includes an analysis of the statute's title. The title of § 1225 is revealing: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The use of "arriving" to describe noncitizens strongly indicates that the statute governs the entrance of noncitizens to the United States. This reading is bolstered by the fact that § 1225 clearly establishes an inspection scheme for when to let noncitizens into the country. In fact, the subheading for § 1225(b)(2)(A) reads "Inspection of Other Aliens," reinforcing the idea that the subsection applies to those coming in, not already present. The statute also explicitly addresses its effect on "stowaways" and "crewm[e]n," words that suggest arrival at a border or port of entry. That Congress separated removal of arriving aliens from its more general section for "Apprehension and detention of aliens," § 1226, implies that Congress enacted § 1225 for a specific, limited purpose. Considering § 1225 in its entirety, then, the Court may infer that the terms "applicant for admission" and "seeking admission" do not implicate noncitizens like Pizarro Reyes . . . [who] lived in the United States for twenty years, never sought admission, and was not arrested when attempting to cross the border or pass through a port of entry illegally.

*Pizarro Reyes*, 2025 WL 2609425 at *5 (cleaned up).

Second, the recent amendment to § 1226 further bolsters the conclusion that Petitioner's detention is not governed by § 1225(b)(2)(A). As *Pizarro Reyes* explains,

> The Laken Riley Act added subsection § 1226(c)(1)(E), which mandates detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes. § 1226(c)(1)(E) (i)–(ii). Considering that § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled," and that § 1226(c)(1)(E) requires

> detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well.

*Pizarro Reyes*, 2025 WL 2609425 at *5. *See also Rodriguez*, 779 F. Supp. 3d at 1258 (noting that the government's interpretation "would render significant portions of Section 1226(c) meaningless," which is an outcome that would violate "one of the most basic interpretive canons," *i.e.*, that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (cleaned up); *Barrajas*, 2025 WL 2717650 at *4 ("[T]he Federal Defendants' interpretation of § 1225 would render substantial portions of § 1226 superfluous by making detention mandatory for nearly every noncitizen who has entered the United States illegally. If this is what Congress intended, it does not make sense that it would have passed a separate statute as part of the same overall scheme that specifically contemplated bond hearings except in enumerated situations. Indeed, it is especially difficult to square the Federal Defendants' interpretation of § 1225 with Congress's decision earlier this year to pass the Laken Riley Act to expand the scope of mandatory detention under § 1226(a). Under the Federal Defendants' interpretation of the interplay between §§ 1225 and 1226, the Laken Riley Act is meaningless. This is not how statutes are to be interpreted.") (cleaned up).

Third, Respondents' position would effectively mean that the overwhelming majority of aliens in removal proceedings are subject to mandatory detention under § 1252(b)(2)(A) and fall outside the ambit of § 1226(a). Such an outcome would be difficult to reconcile with the Supreme Court's observation only a few years ago that § 1226(a) "applies to most [deportable] aliens," "sets out the general rule regarding their arrest and detention pending a decision and removal," and creates a default rule that "[a]liens who are arrested because they are believed to be deportable may generally apply for release on bond or parole while the question of their removal is being decided." *Nielsen*, 586 U.S. at 395, 397. *See also Hasan*, 2025 WL 2682255 at *8 ("[T]he federal respondents' theory contradicts how the Supreme Court has traditionally construed the relationship between §§ 1225(b) and 1226(a). In *Jennings*, the Court explained that

- 11 -

§ 1225(b) governs 'aliens seeking admission into the country' whereas § 1226(a) governs 'aliens already in the country' who are subject to removal proceedings. This distinction makes sense in the broader context of U.S. immigration law. Indeed, the distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. For those who have already entered to United States, the [Supreme] Court has recognized additional rights and privileges not extended to those in the former category who are merely on the threshold of initial entry.") (citations omitted); *Barrajas*, 2025 WL 2717650 at *5 ("The Supreme Court itself has recognized the difference between §§ 1225 and 1226. . . . Thus, even if principles of statutory interpretation did not defeat the Federal Defendants' position (which they do), the Court would be obligated to follow the Supreme Court's guidance anyway.").

The Court thus joins the apparently unbroken line of courts that have recently concluded that the detention of an individual in Petitioner's circumstances does not fall under § 1225(b)(2)(A) but rather under § 1226(a).

V.      Respondents' Remaining Arguments

Respondents advance a variety of reasons why Petitioner's continued detention without a bond hearing would not violate his procedural and substantive due process rights. (Doc. 9 at 9-11.) Respondents also contend that Plaintiff cannot seek relief under the Administrative Procedure Act ("APA"). (*Id.* at 12-13.) It is unnecessary to reach those arguments because the analysis in the preceding section of this order demonstrates that Petitioner is entitled to relief on Count One of his Petition, which is a claim that his "Detention is in Violation of 8 U.S.C. § 1226(a)." (Doc. 1 ¶¶ 42-44.) This obviates the need to decide whether Petitioner is also entitled to relief based on his due process-based claim in Count Two or on his APA claim in Count Three. *Pizarro Reyes*, 2025 WL 2609425 at *8 ("The Court will decline to decide the merits of Pizarro Reyes' due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a).").

Respondents also contend that Petitioner's claims should be rejected because they

are "improper habeas claims" and do not "sound[] in habeas jurisdiction" (Doc. 9 at 11-12.) In support, Respondents rely on *Pinson v. Carvajal*, 69 F.4th 1059 (9th Cir. 2023). (*Id.*) This argument is unavailing. True, *Pinson* holds that "release from confinement is the only available remedy for claims at the writ's core" and that "the relevant question is whether, based on the allegations in the petition, release is legally required irrespective of the relief requested." *Id.* at 1070, 1072. The Court thus interprets Respondents' brief as suggesting that because Petitioner is merely demanding a bond hearing—which will not necessarily result in his release from custody—his claim falls outside the scope of habeas jurisdiction. But any such argument is foreclosed by *Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024), which held that a nearly identical request for release from immigration detention fell squarely within *Pinson*'s "core of habeas." *Id.* at 1194 ("Doe relies primarily on *Pinson* and *Nettles* for the proposition that, because he did not challenge the underlying legal basis for his detention, but rather sought a process remedy in the form of a bond hearing, it follows that his petition falls within the 'core of habeas' as defined in *Pinson* . . . . We are unpersuaded that either of those cases support such a conclusion.").

Next, Respondents cite *Castaneda v. Souza*, 810 F.3d 15 (1st Cir. 2015) (en banc), for the proposition that "Petitioner is not entitled to a bond hearing" in light of 8 U.S.C. § 1226(c). (Doc. 9 at 12.) This argument is puzzling, as *Casteneda* was an equally divided en banc decision by the First Circuit that, as a result of the tie vote, affirmed the district courts' determination that "aliens who . . . were not taken into immigration custody when they were released from criminal custody because they had been released from criminal custody years before their immigration custody started" were not subject to the "detention mandate" under § 1226(c) and instead had "the right to an individualized bond hearing at which they could seek release prior to the completion of the removal process." *Id.* at 18-19 (cleaned up). The portion of *Casteneda* that Respondents cite was the decision of the remaining three First Circuit judges, which did not carry the day.

At any rate, the Supreme Court subsequently took up this issue in *Nielsen*, concluding that the detention mandate in § 1226(c) may apply even if the arrest by

immigration officials does not occur as soon as the alien is released from criminal custody. *Nielsen*, 586 U.S. at 395. But that decision does not assist Respondents for the simple reason that Respondents have made no attempt to establish that Petitioner's criminal history—which consists of three California DUI convictions that resulted in probationary sentences—would trigger § 1226(c) and thus render him susceptible to mandatory detention under that provision. Section 1226(c) only compels the mandatory "detention of aliens who have committed certain crimes including, *inter alia*, any 'aggravated felony,' and any two 'crimes involving moral turpitude.'" *Demore v. Kim*, 538 U.S. 510, 513 n.1 (2003) (citations omitted). Respondents do not argue that Petitioner's prior DUI convictions, resulting in probationary sentences, qualify as "aggravated felonies" and it does not appear that they could qualify. *United States v. Portillo-Mendoza*, 273 F.3d 1224, 1226 (9th Cir. 2001) (concluding that "none of [the defendant's] prior convictions was an 'aggravated felony'" where "[b]etween 1994 and 1999, [the defendant] was convicted of five counts of driving under the influence under California Vehicle Code § 23152"].) Indeed, Respondents have not even established that the prior convictions were felony convictions—based on the probationary sentences, they may well have been misdemeanors. Likewise, Respondents do not argue that Petitioner's prior DUI convictions qualify as crimes involving moral turpitude ("CIMTs").[5]

Last, Respondents advance a variety of arguments regarding the standards for granting temporary or preliminary injunctive relief. (Doc. 9 at 13-16.) But it is unnecessary to address those arguments in light of the decision to accelerate Plaintiff's

---

[5] The Ninth Circuit has held that although "[t]he BIA has never held that a simple DUI offense is a crime involving moral turpitude," *aggravated* DUI "offenses committed with the knowledge that one's driver's license has been suspended or otherwise restricted are crimes involving moral turpitude." *Marmolejo-Campos v. Holder*, 558 F.3d 903, 913, 917 (9th Cir. 2009) (en banc). Additionally, the California courts have held that "felony driving under the influence with three or more driving under the influence convictions within seven years of the instant offense . . . is a crime involving moral turpitude." *People v. Forster*, 29 Cal.App.4th 1746, 1756 (1994). Nevertheless, as noted, Respondents do not advance any argument here as to why Petitioner's prior convictions should qualify as CIMTs and the IJ did not find that Petitioner was ineligible for a bond hearing based on § 1226(c)—instead, the IJ's sole basis for rejecting Petitioner's request was the erroneous determination that the IJ lacked jurisdiction in light of the applicability of § 1252(b)(2)(A), as determined in *Matter of Q Li*. (Doc. 9-1 at 10.)

request for a preliminary injunction into a trial on the merits, as permitted by Rule 65(a)(2). Such acceleration is particularly warranted here because the dispute turns on pure issues of law.

Accordingly,

**IT IS ORDERED** that:

1. Pursuant to Federal Rule of Civil Procedure 65(a), the decision on Petitioner's Motion for Preliminary Injunction (Doc. 2) is consolidated with the merits.

2. Post-consolidation, Petitioner's Motion for Preliminary Injunction (Doc. 2) is **granted**.

3. Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted** as to Ground One. The Petition is otherwise denied without prejudice as moot.

4. Respondents must provide Petitioner a bond redetermination hearing within seven days or otherwise release him from custody under the same conditions that existed before his detention.

5. Respondents must provide a Notice of Compliance within seven days of providing Petitioner with a bond redetermination hearing.

6. All remaining motions are denied as moot.

7. The Clerk shall enter judgment in Petitioner's favor and close this case.