**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Francisco Cerritos Echevarria, | No. CV-25-03252-PHX-DWL (ESW) |
| Petitioner, | **ORDER** |
| v. | |
| Pam Bondi, et al., | |
| Respondents. | |

On September 5, 2025, Petitioner, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2241 challenging his immigration detention, as well as a motion for temporary restraining order and preliminary injunction. (Docs. 1, 2.) After the motion for injunctive relief became fully briefed (Doc. 9), the Court notified the parties of its intent to consolidate the request for preliminary injunction with the merits of this action pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure (Doc. 10), issued a tentative ruling (Doc. 11), and held a hearing (Doc. 12). The Court now grants the petition to the extent it seeks an order compelling a prompt bond hearing before an immigration judge ("IJ").

I.      Relevant Background

Petitioner is a native and citizen of El Salvador. (Doc. 1 ¶ 14; Doc. 9-1 at 3 ¶ 4.)

On May 1, 2001, the United States Border Patrol ("USBP") encountered Petitioner at or near Douglas, Arizona. (Doc. 9-1 at 3 ¶ 5.) Petitioner was processed as a voluntary return and returned to Mexico. (*Id.*)

At an unspecified time later in 2001, Plaintiff returned to the United States. (Doc.

1 ¶ 37 ["Petitioner has resided in the United States for approximately twenty-four years . . . . Petitioner has a prior voluntary return; however, since his entry in 2001, he has had no contact with immigration authorities."].)

On three occasions between 2011 and 2019, Petitioner was convicted of the crime of driving under the influence of alcohol ("DUI") and sentenced to a short jail term followed by a period of probation. (Doc. 9-1 at 3 ¶¶ 6-8.)

On July 2, 2025, Petitioner was arrested outside his home in Los Angeles, California and placed in removal proceedings. (Doc. 1 ¶¶ 38, 39; Doc. 3-2 at 3; Doc. 9-1 at 3 ¶¶ 9, 12.) In the "Notice to Appear," issued that same day, the issuing officer had the option of identifying Petitioner as (1) "an arriving alien"; (2) "an alien present in the United States who has not been admitted or paroled"; or (3) an alien who has "been admitted to the United States, but are removable for the reasons stated below." (Doc. 9-1 at 6.) The issuing officer checked the box indicating that Petitioner is "an alien present in the United States who has not been admitted or paroled." (*Id.*)

A July 8, 2025 policy guidance memorandum issued by the U.S. Department of Homeland Security ("DHS") announced that DHS "has revisited its legal position on detention and release authorities." (Doc. 3-2 at 10.) Under this "revisited" legal position, "[e]ffective immediately, it is the position of DHS that" any "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival," should be deemed an "applicant for admission" and thus subject to mandatory detention under 8 U.S.C. § 1225(b). (*Id.*) "For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." (*Id.*)

On July 14, 2025, an IJ denied Petitioner's request for bond. (Doc. 9-1 at 3 ¶ 12.) The order stated: "This Court lacks jurisdiction pursuant to Matter of Q Li." (Doc. 9-1 at 10.) The cited decision, *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025), held that the IJ in that case "lack[ed] jurisdiction to consider the respondent's request for release on bond" because the respondent should be "treated as an applicant for admission" and was "detained

1  under . . . 8 U.S.C. § 1225(b)(2)(A) and thus ineligible for release on bond." *Id.* at 66-68
2  (cleaned up).

3  On August 20, 2025, an IJ denied Petitioner's request to reconsider the bond
4  decision. (Doc. 9-1 at 4 ¶ 15.)

5  II.  Petitioner's Position

6  Petitioner's overarching argument is that the "[t]he denial of bond hearing to
7  Petitioner and his ongoing detention on the basis of the new DHS policy violates the plain
8  language of the Immigration and Nationality Act . . . .  Despite the new DHS policy's
9  assertions to the contrary, 8 U.S.C. § 1225(b)(2)(A) does not apply to individuals like
10 Petitioner who previously entered and are now residing in the United States.  Instead, such
11 individuals are subject to a different statute, § 1226(a), that allows for release on bond or
12 conditional parole.  Section 1226(a) expressly applies to people who, like Petitioner, are
13 charged as removable for having entered the United States without inspection and being
14 present without admission.  Respondents' new legal interpretation set forth in the policy is
15 contrary to the statutory framework and contrary to decades of agency practice applying
16 § 1226(a) to people like Petitioner who are present within the United States.  Respondents'
17 new policy and the resulting ongoing detention of Petitioner without a bond hearing is
18 depriving Petitioner of statutory and constitutional rights and unquestionably constitutes
19 irreparable injury." (Doc. 3 at 2-3.)

20 As relief, Petition seeks an order "enjoining Respondents from continuing to detain
21 him unless Petitioner is provided an individualized bond hearing before an immigration
22 judge pursuant to 8 U.S.C. § 1226(a) within seven days." (*Id.* at 3.)

23 III. Jurisdiction-Stripping Arguments

24 In their response brief, Respondents argue that 8 U.S.C. § 1252(g), § 1252(b)(9),
25 § 1252(e), and/or § 1252(a)(2)(A) "unambiguously strip" this Court of jurisdiction to
26 consider Petitioner's claims. (Doc. 9 at 1, 4-7.)  However, during oral argument,
27 Respondents withdrew this contention. Nevertheless, because "Article III generally
28 requires a federal court to satisfy itself of its jurisdiction over the subject matter before it

considers the merits of a case," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), the Court has an independent duty to determine whether those jurisdiction-stripping provisions apply here. As explained below, they do not. *Barrajas v. Noem*, 2025 WL 2717650, *3 (S.D. Iowa 2025) ("The Federal Defendants argue that sections 1252(g) and (b)(9) preclude this Court from weighing in on active deportation cases, even for the limited purpose of evaluating whether respondents in those proceedings are entitled to bond hearings and other forms of due process. Federal officials have raised this argument in recent months in cases similar to this one. The Court agrees with these well-reasoned decisions and will not repeat their analysis in its entirety.").

First, § 1252(g)[1] "does not preclude jurisdiction over the challenges to the legality of [an alien's] detention." *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023). *See also Hasan v. Crawford*, 2025 WL 2682255, *4 (E.D. Va. 2025) ("Because Hasan's custody proceedings are independent of, and collateral to, the removal process, § 1252(g) does not serve as a jurisdictional bar. Accordingly, the Court finds that it possesses jurisdiction to entertain Hasan's Petition to the extent he challenges the constitutionality of his detention."). Indeed, the Supreme Court has already "rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482 (1999)). Additionally, the Ninth Circuit recently reinforced that "[i]nstead of sweeping in any claim that can technically be said to arise from the three listed actions, the provision refers to just those three specific actions themselves.'" *Ibarra-Perez v. United States.*, __ F.4th __, 2025 WL 2461663, *7 (9th Cir. 2025) (cleaned up) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)).

Because "the phrase 'arising from' is not 'infinitely elastic,'" it "does not reach 'claims that are independent of, or wholly collateral to, the removal process.'" *Kong*, 62

---

[1] "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).

F.4th at 614 (citation omitted). "Among such 'collateral' claims" not subject to the § 1252(g) bar on judicial review are "claims seeking review of the legality of a petitioner's detention." *Id*. Even though, "[i]n a but-for sense," a claim of unlawful detention might arise from the government's decision to commence proceedings, adjudicate a case, or execute a removal, challenges to unlawful detention "do not 'arise from' the government's decision to 'execute removal orders' within the meaning of § 1252(g) simply because the claims relate to that discretionary, prosecutorial decision." *Id.* at 613.

Next, as for § 1252(b)(9),[2] *Ibarra-Perez* reiterated that this provision does not bar claims that are "independent of or collateral to the removal process." *Ibarra-Perez*, 2025 WL 2461663 at *9. Likewise, in *Nielsen v. Preap*, 586 U.S. 392 (2019), the Supreme Court held that § 1252(b)(9) did not bar a lawsuit that, like this one, sought to challenge the government's contention that it was statutorily entitled to detain aliens without a bond hearing during the pendency of their removal proceedings. *Id.* at 402 ("Nor are we stripped of jurisdiction by § 1252(b)(9) . . . [because] respondents here are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]; and they are not even challenging any part of the process by which their removability will be determined.") (cleaned up). *See also Hasan*, 2025 WL 2682255 at *4 ("Section 1252(b)(9) does not insulate detention orders from judicial review because they are 'separate and apart from' orders of removal.").

Next, § 1252(e) only applies "in any action pertaining to an order to exclude an alien."[3] Here, Petitioner does not seek to challenge an exclusion order and only challenges the denial of a bond hearing.

---

[2] "Judicial review of all questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).

[3] "Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may enter declaratory, injunctive, other equitable relief in any action pertaining to an order to exclude an alien in accordance with section § 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." 8 U.S.C. § 1252(e)(1)(A).

Finally, for similar reasons, § 1252(a)(2)(A)[4] is inapplicable here. *Padilla v. U.S. Immigration and Customs Enforcement*, 704 F. Supp. 3d 1163, 1170 (W.D. Wash. 2023) ("[T]he Court continues to find that § 1252(a)(2)(A) has no application to Plaintiffs' claims. This provision only applies to the procedures and policies necessary to implement the removal process. Here, Plaintiffs' bond hearing claims do not challenge the removal process—just whether they should be afforded a bond hearing . . . .").

IV. <u>Whether Petitioner Is Subject To Mandatory Detention Under § 1225(b)(2)(A) Or Is Entitled To A Bond Hearing Under § 1226(a)</u>

Under 8 U.S.C. § 1225(b)(2)(A), and absent exceptions that are inapplicable here, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." *Id.* Respondents contend that Petitioner qualifies an "applicant for admission" for purposes of this provision, even though he has never formally applied for admission, by operation of law under § 1225(a)(1), which provides: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." *Id.* Petitioner disagrees, arguing that the question of his detention is governed not by § 1225(b)(2)(A) but by § 1226(a), which provides, in pertinent part, that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General . . . may continue to detain the arrested alien; and . . . may release the alien on . . . bond of at least $1,500 with security approved by, and

---

[4] "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—(i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title . . . ." 8 U.S.C. § 1252(a)(2)(A).

- 6 -

containing conditions prescribed by, the Attorney General; or . . . conditional parole." *Id.*

In recent months, many district courts across the country have grappled with the same issue, and it appears that all but one of them has rejected Respondents' position and concluded that an alien in Petitioner's situation (*i.e.*, an alien who entered the United States without inspection, never formally applied for admission, and has been living in the United States for years or decades) is entitled to a bond hearing under § 1226(a). *See, e.g., Hasan*, 2025 WL 2682255 at *9 ("For all these reasons, . . . Hasan's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures."); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025) ("Rodriguez has shown that the text of Section 1226, canons of interpretation, legislative history, and longstanding agency practice indicate that he is governed under Section 1226(a)'s 'default' rule for discretionary detention.  The Court is persuaded that Rodriguez is likely to succeed on the merits that he is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision."); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, *7 (E.D. Mich. 2025) ("The BIA's decision to pivot from three decades of consistent statutory interpretation and call for Pizarro Reyes' detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation.  At least a dozen federal courts concur generally with this Court's interpretation of the statutory language as applied in this context."); *Barrera v. Tindall*, 2025 WL 2690565, *5 (W.D. Ky. 2025) ("Courts across the country have been faced with similar questions of law and fact presented by the United States.  And *every court* who has examined this novel interpretation of Section 1225 by the United States has rejected their theory and adopted Petitioner's.  This includes courts within the Sixth Circuit, and across the country."); *Vazquez v. Feeley*, 2025 WL 2676082, *16 (D. Nev. 2025) ("In sum, the Court finds that the text and canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance, demonstrate that Petitioner is likely to succeed in establishing he and similarly situated noncitizens are subject to detention under § 1226(a) and its implementing

1 regulations, not § 1225(b)(2)(A)."). The one apparent exception is *Chavez v. Noem*, 2025
2 WL 2730228 (S.D. Cal. 2025), which recently concluded that "aliens present in the United
3 States who have not been admitted" are, "[b]y the plain language of § 1225(a)(1), . . .
4 'applicants for admission' and thus subject to the mandatory detention provisions of
5 'applicants for admission' under § 1225(b)(2)." *Id.* at *4 (cleaned up).

6 The Court has carefully reviewed those decisions and, for the reasons set forth below, agrees with the majority of courts that have concluded that § 1226(a), rather than § 1225(b)(2)(A), applies in this circumstance. The Court clarifies, however, that it views this issue as presenting a complicated and debatable question. Indeed, Respondents' presentation during oral argument has persuaded the Court to substantially revise the reasoning in the tentative ruling that was issued before oral argument.

12 Turning to the merits, the parties' dispute is fundamentally a dispute about statutory interpretation. It is a truism that such "analysis begins with the language of the statute," *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017), and Respondents' position appears, at first blush, to be consistent with this principle. Respondents simply point to § 1225(a)(1)'s specification that "[a]n alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission" and argue that such an alien is therefore an "applicant for admission" for purposes of § 1225(b)(2)(A)'s detention mandate. Although this approach has surface appeal, the Court perceives at least two problems with it: first, it ignores some of the additional requirements imposed by § 1225(b)(2)(A); and second, it fails to account for the broader statutory scheme, particularly in light of how that broader scheme has been interpreted by the Supreme Court.

24 A. **Section 1225(b)(2)(A)**

25 Even assuming Petitioner is deemed an "applicant for admission" by operation of law under § 1225(a)(1), it doesn't necessarily follow that § 1225(b)(2)(A) would govern the question of Petitioner's detention during a removal proceeding. As noted, § 1225(b)(2)(A), which falls under the heading "Inspection of Other Aliens," provides that

"in the case of an alien who is an applicant for admission, *if the examining immigration officer* determines that an alien *seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* (emphases added).

The first and third italicized phrases require Petitioner to have undergone an inspection by an "examining immigration officer," who in turn made a finding that Petitioner is "not clearly and beyond a doubt entitled to be admitted." Respondents' brief makes no effort to address these requirements. Other courts have identified this as a flaw in Respondents' position. *See, e.g., Lepe v. Andrews*, 2025 WL 2716910, *4 (E.D. Cal. 2025) ("As other courts have concluded, for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.' As an initial matter, respondents have failed to show in this case that an 'examining immigration officer' made these determinations. The government points solely to the Notice to Appear issued on July 1, 2025. But that document does not contain any such findings by the immigration officer.") (citations omitted).

If the outcome turned solely on this issue, the Court might solicit supplemental briefing from the parties. On the one hand, the record reveals that on July 2, 2025, Petitioner was "brought into custody" by "ICE/ERO[5] along with DEA" (Doc. 9-1 at 2 ¶ 9) and that during that encounter, "ICE/ERO Officers . . . . conducting an investigation . . . conducted a field interview to determine [Petitioner's] removability and alienage" and made a determination that Petitioner "is amenable to removal" (Doc. 3-2 at 2-5). The document memorializing this encounter, known as a Form I-213, contains a signature block indicating that it was completed by an "Examining Officer." (*Id.* at 2.) Although the form does not contain the magic words "not clearly and beyond a doubt entitled to be admitted,"

---

[5] "ERO" stands for Enforcement and Removal Operations. *See* https://www.ice.gov/about-ice/ero.

1 the formal "Charge[] of Removability," which states that Petitioner "makes no claim/appears to have no claim to USC [United States citizenship] and is amendable to removal under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act" (*id.* at 5), may functionally operate as such a finding. Thus, it might be argued that this document constitutes proof that an "examining immigration officer" performed an inspection and made the finding required by § 1225(b)(2)(A).

On the other hand, some courts have questioned whether an ICE/ERO officer conducting removal operations qualifies as the sort of "examining immigration officer" contemplated by § 1225(b)(2)(A). *Jimenez v. FCI Berlin, Warden*, 2025 WL 2639390, *7 (D.N.H. 2025) ("With respect to the requirements that the 'examining immigration officer' conduct an 'inspection' of the person, 'examination' is not an unbounded concept. Rather, it is the specific legal process one undergoes while trying to enter the country. Not every encounter with an immigration officer necessarily constitutes an examination or inspection under section 1225.") (cleaned up). Indeed, § 1225(b) is entitled "Inspection of Applicants for Admission" and § 1225(a)(3), entitled "Inspection," provides that "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." Such verbiage suggests that the sort of "inspection" contemplated by § 1225(b)(2)(A) is an inspection by an examining immigration officer that occurs at the time an alien first applies for or otherwise seeks admission to the United States—not an encounter with an ICE/ERO officer 24 years later.

At any rate, the Court concludes that further briefing on this issue is unnecessary because the second italicized phrase above in § 1225(b)(2)(A), which presupposes that the inspection occurred at a time when the applicant for admission was "seeking admission," poses a bigger obstacle to Respondents' position. The word "seeking" is the present participle of the verb "seek." It thus has a temporal element—Petitioner must have been in the process of seeking admission at the time of the inspection. *United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) ("[U]se of . . . the present participle, or '-ing' form of

an action verb, generally indicates continuing action.").

It is hard to see how Petitioner could be deemed to have been "seeking" admission at the time of the encounter on July 2, 2025. By that point, Petitioner had already been present in the United States for 24 years, having arrived and entered in 2001. (Doc. 1 ¶ 37.) Moreover, under Respondents' interpretation of § 1225(a)(1), Petitioner became an "applicant for admission" in 2001, upon his arrival and entry. (Doc. 3-2 at 10 [DHS memo: "An 'applicant for admission' is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival."]; Doc. 9 at 7 ["Section 1225 applies to 'applicants for admission' such as Petitioner, who are defined as 'alien[s] present in the United States who [have] not been admitted' or 'who arrive[] in the United States.'"].) Implicit in Respondents' position, then, is that Petitioner somehow existed in a perpetual state of "seeking" admission during the 24-year period between when he first became an "applicant for admission" in 2001, by virtue of his entry into the country, and when he was encountered and inspected by an immigration officer in 2025.

This logic is difficult to reconcile with *Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc). There, the plaintiff was charged with being removable under a provision of the Immigration and Nationality Act ("INA") that renders inadmissible any alien who is not in possession of certain valid immigration documents "at the time of application for admission." *Id.* at 924 (citation omitted). A prior court had ruled that if an alien lacks such documents at the time the alien is deemed by operation of law under § 1225(a)(1) to be an "applicant for admission," the alien "should therefore be deemed to have made an actual application for admission." *Id.* at 927 (emphasis omitted). *Torres* reversed, explaining that this approach improperly "conflated the term 'applicant for admission' from § 1225(a)(1) with the term 'application for admission' in  § 1182(a)(7)." *Id.* The court emphasized that the phrase "at the time of application for admission" refers "to the particular point in time when a noncitizen submits an application to physically enter into the United States." *Id*. at 924. In the course of reaching this conclusion, the court rejected

the government's argument "that even if 'the time of application for admission' begins at the moment when an immigrant applies to enter the country, this moment *continues*, potentially for years or decades, until the immigrant appears before the IJ in removal proceedings." *Id.* at 926. The court explained: "Given that an immigrant submits an 'application for admission' at a distinct point in time, stretching the phrase 'at the time of application for admission' to refer to a period of years would push the statutory text beyond its breaking point." *Id.*

    Here, too, it would seem to push the statutory text beyond its breaking point to conclude that Plaintiff became an "applicant for admission" by operation of law in 2001, due to his arrival in the United States at that time, yet was still "seeking admission" 24 years later. Other courts have reached similar conclusions. *See, e.g., Vazquez*, 2025 WL 2676082 at *12-13 ("To reiterate, § 1225(b)(2)(A) narrows the above broader definition of 'applicants for admission' and applies in the context of (1) 'inspection' by an 'examining immigration officer' only to (2) 'applicants for admission' as defined [in § 1225(a)(1)], who are (3) 'seeking admission,' and (4) whom § 1225(b)(1) does not address. Respondents assert that this definition of 'applicant for admission' is the key provision . . . . [b]ut as the Ninth Circuit held in interpreting the phrase 'applicant for admission' within the context of the application of § 1225(b)(1) to a noncitizen who was placed in expedited removal proceedings thirteen years after entry, an immigrant submits an 'application for admission' at a distinct point in time and stretching the phrase to continue potentially for years or decades would push the statutory text beyond its breaking point . . . . Moreover, Respondents' sweeping and unlimited reading of 'applicants for admission' ignores the fact that that term is further limited in § 1225(b)(2) by the active construction of the phrase 'seeking admission' which entails some kind of affirmative action taken to obtain authorized entry.") (citations omitted); *Jimenez*, 2025 WL 2639390 at *8 ("The government's assertion that § 1225 applies to all applicants for admission would also read out of § 1225(b)(2)(A) the requirement that the noncitizen be 'seeking admission.' This phrase, to the extent possible, must be given meaning independent of the

requirement that the person be an applicant for admission. . . . Because § 1225(b)(2)(A) applies to applicants for admission who are seeking to enter the United States, it cannot apply to Jimenez, who has already entered the country and has been residing here for over two years.") (citations omitted); *Romero v. Hyde*, 2025 WL 2403827, *10 (D. Mass. 2025) ("[I]t is at least clear that 'applicant for admission' and 'seeking admission' are not synonymous. Nevertheless, one might try to argue (as Respondents have) that all 'applicants for admission' are necessarily (and continuously) 'seeking admission,' so long as they continue to exist in the United States. This is an obvious violation of the rule against surplusage. It also goes against the plain, ordinary meaning of the words 'seeking' and 'admission.'") (citations omitted).

### B. **The Broader Statutory Scheme**

Putting aside these textual problems with Respondents' position, Respondents' narrow focus on § 1225(a)(1) also ignores the complexities of interpreting the INA, a "dense statute" whose "complex provisions . . . have provoked comparisons to a morass, a Gordian knot, and King Minos's labyrinth in ancient Crete" and which must be interpreted "against the backdrop of our constitutional principles, administrative law, and international treaty obligations. Divining its meaning is ordinarily not for the faint of heart." *Torres*, 976 F.3d at 923 (cleaned up). To that end, "[i]n determining whether Congress has specifically addressed the question at issue, the court should not confine itself to examining a particular statutory provision in isolation. Rather, it must place the provision in context, interpreting the statute to create a symmetrical and coherent regulatory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121 (2000). *See also Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101-02 (2012) ("Statutory language . . . cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (cleaned up).

Several recent decisions by the Supreme Court provide guidance in understanding this context. In its 2018 decision in *Jennings*, the Supreme Court addressed "the proper

interpretation of §§ 1225(b), 1226(a), and 1226(c)." *Jennings*, 583 U.S. at 289. The Court held: "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* Elsewhere, the Court characterized § 1226(a) as the "default rule" governing "the process of arresting and detaining" aliens who are already "*inside the United States*." *Id.* at 288 (emphasis added). Later, the Court added: "*§ 1226 applies to aliens already present in the United States*. Section 1226(a) creates a default rule for those aliens . . . ." *Id.* at 303 (emphasis added). Accepting Respondents' position would turn those statements on their head.

Similarly, in its 2019 decision in *Nielsen*, the Supreme Court reiterated that § 1226(a) "applies to most [deportable] aliens," "sets out the general rule regarding their arrest and detention pending a decision and removal," and creates a default rule that "[a]liens who are arrested because they are believed to be deportable may generally apply for release on bond or parole while the question of their removal is being decided." *Nielsen*, 586 U.S. at 395, 397. Again, those statements would not make sense under Respondents' new interpretation. Notably, during oral argument, Respondents were unable to identify any class of aliens whose detention would be governed by § 1226(a), rather than § 1225(b)(2)(A), if Respondents' new interpretation were adopted. Such an outcome would conflict with *Nielsen*'s observation that § 1226(a) applies to "most" deportable aliens and *Jennings*'s observation that § 1226(a) provides the "default rule" governing the detention of aliens "inside the United States" or "already present in the United States."[6]

On the other hand, the Court acknowledges that *Torres* suggests that the enactment of § 1225(a)(1) may have been intended to achieve a more consequential alteration of the scope and structure of the INA than *Jennings* and *Nielsen* seem to contemplate. The

---

[6] To that end, even assuming § 1226(a) would still apply under Respondents' new interpretation to small, discrete groups of aliens, it still would not apply to "most" deportable aliens in the manner that *Nielsen* contemplates or provide the "default rule" that *Jennings* contemplates.

- 14 -

question of statutory interpretation addressed in *Torres* was different than the question presented here—as discussed in detail above, *Torres* "construe[d] the meaning of the phrase 'at the time of application for admission'" and "conclude[d] that the phrase refers to the particular point in time when a noncitizen submits an application to physically enter into the United States." *Torres,* 976 F.3d at 924. Nevertheless, in the course of interpreting that phrase, the court also discussed "the phrase 'applicant for admission,'" which it deemed "a term of art denoting a particular legal status, as the history of its enactment makes clear." *Id.* at 927. The court continued:

> Section 1225(a)(1) was added to the INA as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Prior to the passage of IIRIRA, immigration law . . . created an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully. IIRIRA did away with this entry doctrine . . . anomaly. . . . [M]ost importantly for our purposes, IIRIRA added § 1225(a)(1). This provision ensures that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA—in the position of an "applicant for admission." Now, in removal proceedings, the relevant distinction for procedural purposes is whether the immigrant has been lawfully admitted, regardless of actual physical presence.

*Id.* at 927-28 (cleaned up). As *Chavez* notes, this passage can be viewed, at least in isolation, as consistent with Respondents' position. *Chavez,* 2025 WL 2730228 at *4 (citing *Torres* in support of the conclusion that the government's "reading of the statute comports with Congress' addition of § 1225(a)(1) by IIRIRA in 1996" and stating that a contrary conclusion "would in effect repeal that statutory fix intended by Congress in enacting IIRIRA").

An added difficulty in determining how to reconcile and apply these precedents is that none of them addressed the precise issue of statutory interpretation presented in this case. *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Sloan v. State Farm Mut. Auto.*

1  *Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004) ("[C]ases are not authority for propositions not considered.") (internal quotation marks omitted). Even so, a "lower federal court . . . [is] advised to follow the Supreme Court's considered dicta" and "afford them a weight that is greater than ordinary judicial dicta as a prophecy of what the Court might hold." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 n.4 (9th Cir. 2020) (cleaned up).

Ultimately, the Court concludes that it must give the most credence to *Jennings* and *Nielsen* when evaluating whether Respondents' position is consistent with the entire statutory scheme. Both of those cases, unlike *Torres*, specifically addressed the question of detention and bond hearings during removal proceedings. Additionally, *Jennings* addressed how §§ 1225 and 1226 fit together in that context. The Court simply cannot see how it could adopt Respondents' position without running afoul of *Jennings*'s reasoning. *Nat. Institutes of Health v. Am. Public Health Ass'n*, 145 S. Ct. 2658, 2663-65 (2025) (Gorsuch, J., concurring in part and dissenting in part) ("[A] precedent of this Court must be followed by the lower federal courts . . . . [W]hen this Court issues a decision, it constitutes a precedent that commands respect in lower courts. . . . [R]egardless of a decision's procedural posture, its reasoning—its ratio decidendi—carries precedential weight in future cases. . . . [J]udges are duty-bound to respect the hierarchy of the federal court system created by the Constitution and Congress.") (cleaned up).

*Torres*, in contrast, did not cite § 1226 or mention the concept of detention or bond hearings. Additionally, Ninth Circuit cases decided after *Torres* reiterate, consistent with *Jennings* and *Nielsen*, that aliens who are "present" in the United States are, as a general rule, entitled to a bond hearing under § 1226(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196-97 (9th Cir. 2022) ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal. . . . Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final. . . . Additional provisions supplement § 1226's detention scheme. Section 1225(b) applies to an 'applicant for admission' . . . .") (citations omitted). Again, it would make no sense for

*Rodriguez Diaz* to have characterized § 1225(b) as a "supplement" to § 1226's "detention scheme" if, as Respondents now contend, § 1225(b)(2)(A) actually provides for mandatory detention in all (or nearly all) cases involving aliens present in the United States.[7]

The Court thus concludes, as have many other courts addressing the same issue, that Respondents' narrow focus on the language of § 1225(a)(1) fails to take account of the entirety of the statutory scheme. For example, in *Giron Reyes v. Lyons*, 2025 WL 2712427 (N.D. Iowa), the court acknowledged that the government's interpretation of §§ 1225(a)(1) and 1225(b)(2)(A) was "intuitive" when the statutory language was read "in isolation" but concluded that the government's interpretation nevertheless failed to carry the day because when § 1225 was considered "alongside its § 1226 companion," this comparison "demonstrates that the most natural interpretation of § 1225 is that it applies to aliens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection. Section 1225 repeatedly refers to aliens entering the country. The statute further explicitly addresses 'crewm[e]n' and 'stowaway[s]' in § 1225(b)(2), reflecting that Congress envisions applicants for admission as being arriving aliens. In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. In sum, § 1225 is set up with arriving aliens in mind. Compare that to § 1226's broader language that realistically applies to any alien awaiting a removal decision. Considering § 1225 in its entirety, and in relation to § 1226, reveals that § 1225 is more limited than what that plain text of § 1225(a)(1) might indicate when

---

[7] Many other courts agree that Respondents' position conflicts with *Jennings* and other relevant Supreme Court precedents. *See, e.g., Hasan*, 2025 WL 2682255 at *8 ("[T]he federal respondents' theory contradicts how the Supreme Court has traditionally construed the relationship between §§ 1225(b) and 1226(a). In *Jennings*, the Court explained that § 1225(b) governs 'aliens seeking admission into the country' whereas § 1226(a) governs 'aliens already in the country' who are subject to removal proceedings. This distinction makes sense in the broader context of U.S. immigration law. Indeed, the distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. For those who have already entered to United States, the [Supreme] Court has recognized additional rights and privileges not extended to those in the former category who are merely on the threshold of initial entry.") (citations omitted); *Barrajas*, 2025 WL 2717650 at *5 ("The Supreme Court itself has recognized the difference between §§ 1225 and 1226. . . . Thus, even if principles of statutory interpretation did not defeat the Federal Defendants' position (which they do), the Court would be obligated to follow the Supreme Court's guidance anyway.").

1 construed in the abstract." *Id.* at \*4-6.

### C. Further Considerations

The additional points raised by Respondents during oral argument do not compel a different conclusion.

Respondents placed heavy emphasis on what they deemed "public policy" considerations, arguing that it would be preferable to have an immigration system in which aliens who enter the country without inspection and evade detection for years or decades are not effectively treated more favorably, at least for detention purposes, than other aliens. But such arguments are directed to the wrong branch of government—the Court's role is simply to interpret the relevant statutory provisions. *Manufacturers Hanover Tr. Co. v. C.I.R.*, 431 F.2d 664, 668 (2d Cir. 1970) ("[I]t transcends the judicial function to rewrite the statute to conform to considerations of policy. If the facts of this case demonstrate a . . . loophole Congress, not the courts, should plug it.") (cleaned up).

Respondents also suggested that because the INA vests the Attorney General with significant discretion when it comes to the enforcement of the immigration laws, Respondents' new interpretation of the relevant statutes should be reviewed deferentially. But as the Supreme Court recently emphasized, "courts must exercise independent judgment in determining the meaning of statutory provisions" and "need not . . . defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394, 413 (2024). This is particularly true where the agency adopted the opposite interpretation for nearly three decades. *Pizarro Reyes*, 2025 WL 2609425, at \*8 ("For almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception. Accordingly, the Respondents' proposed statutory interpretation does not align with the executive branch's contemporaneous guidance when the IIRIA passed or with the expectations the guidance established.").

The bottom line is that Petitioner is entitled to a bond hearing under § 1226(a) as a matter of statutory construction, albeit statutory construction that is complicated and not

entirely free of doubt.[8]

V.     Respondents' Remaining Arguments

Respondents advance a variety of reasons why Petitioner's continued detention without a bond hearing would not violate his due process rights. (Doc. 9 at 9-11.) Respondents also contend that Petitioner cannot seek relief under the Administrative Procedure Act ("APA"). (*Id.* at 12-13.) It is unnecessary to reach those arguments because the analysis in the preceding section of this order demonstrates that Petitioner is entitled to relief on Count One, which is a claim that his "Detention is in Violation of 8 U.S.C. § 1226(a)." (Doc. 1 ¶¶ 42-44.) This obviates the need to decide whether Petitioner is also entitled to relief based on his due process-based claim in Count Two or his APA claim in Count Three. *Pizarro Reyes*, 2025 WL 2609425 at *8 ("The Court will decline to decide the merits of Pizarro Reyes' due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a).").

Respondents also contend that Petitioner's claims should be rejected because they are "improper habeas claims" and do not "sound[] in habeas jurisdiction" (Doc. 9 at 11-12.) In support, Respondents rely on *Pinson v. Carvajal*, 69 F.4th 1059 (9th Cir. 2023). (*Id.*) This argument is unavailing. True, *Pinson* holds that "release from confinement is the only available remedy for claims at the writ's core" and that "the relevant question is whether, based on the allegations in the petition, release is legally required irrespective of the relief requested." *Id.* at 1070, 1072. The Court thus interprets Respondents' brief as suggesting that because Petitioner is merely demanding a bond hearing—which will not necessarily result in his release from custody—his claims fall outside the scope of habeas jurisdiction. But any such argument is foreclosed by *Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024), which held that a similar request fell within *Pinson*'s "core of habeas." *Id.* at 1194 ("Doe relies primarily on *Pinson* and *Nettles* for the proposition that, because he did

---

[8]     Given these determinations, it is unnecessary to wade into some of the additional reasons that courts have provided for rejecting Respondents' position, which include that the position is inconsistent with the recent amendment to § 1226 as part of the Laken Riley Act and inconsistent with the relevant legislative history materials.

not challenge the underlying legal basis for his detention, but rather sought a process remedy in the form of a bond hearing, it follows that his petition falls within the 'core of habeas' as defined in *Pinson* . . . . We are unpersuaded that either of those cases support such a conclusion.").[9]

Last, Respondents advance a variety of arguments regarding the standards for granting temporary or preliminary injunctive relief. (Doc. 9 at 13-16.) But it is unnecessary to address those arguments now that Plaintiff's request for a preliminary injunction has been consolidated with a trial on the merits, as permitted by Rule 65(a)(2).

Accordingly,

**IT IS ORDERED** that:

1. Pursuant to Federal Rule of Civil Procedure 65(a), the decision on Petitioner's Motion for Preliminary Injunction (Doc. 2) is consolidated with the merits. Post-consolidation, Petitioner's Motion for Preliminary Injunction (Doc. 2) is **granted**.

2. Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted** as to Ground One. The Petition is otherwise denied without prejudice as moot.

3. Respondents must provide Petitioner a bond redetermination hearing within seven days or otherwise release him from custody under the same conditions that existed before his detention.

4. Respondents must provide a Notice of Compliance within seven days of providing Petitioner with a bond redetermination hearing.

5. The Clerk shall enter judgment in Petitioner's favor and close this case.

Dated this 3rd day of October, 2025.

Dominic W. Lanza
United States District Judge

---

[9] In their response brief, Respondents also cited *Castaneda v. Souza*, 810 F.3d 15 (1st Cir. 2015) (en banc), for the proposition that "Petitioner is not entitled to a bond hearing" in light of 8 U.S.C. § 1226(c). (Doc. 9 at 12.) However, during oral argument, Respondents withdrew this argument.